Otto A. LOEL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12312.

Criminal Court of Appeals of Oklahoma.

Aug. 1, 1956.

Rehearing Denied Sept. 5, 1956.

Percy Hughes, Hobart, Harold Witcher, Cordell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, Otto A. Loel, defendant below, was charged with the murder of Elizabeth Jeanne Henderson, alleged to have been committed in Oklahoma City, Oklahoma, on or about January 10, 1954, in the Modern Motel in said city and state. The offense was alleged to have been effected by 13 mortal stab wounds on her body, her chest, and back from which she did die, all as intended by the defendant. The defendant was tried by a jury, convicted, his punishment fixed at death in the electric chair in the State Penitentiary of Oklahoma. Judgment and sentence were entered accordingly from which this appeal has been perfected.

The defendant does not question the sufficiency of the evidence, but in a case of

this character we deem it essential that the facts be briefly stated. The record discloses the defendant and the victim, both married and residents of California, left their lawful respective spouses on a trip, ostensibly to Ohio to see the victim's mother. According to the defendant, they actually entered into an adulterous relationship with no intention of returning to California. The trip, as planned by the said parties, was made in the defendant's automobile, arriving in Oklahoma City on the 10th day of January, 1954, at about 11:00 A.M. The defendant and the victim stopped and registered at the Modern Motel. Later, at about 5:00 P.M., they were again observed entering their room. About 7:00 P.M. the defendant came to the motel office and paid another day's rent stating they would be late getting in the next (Monday) night and wanted the room available upon their return. The defendant advised Mr. Bowersox, the operator of the motel, not to let anyone in their room stating that they had some things molested in other places where they had stopped and to keep the maid out. The defendant did not return Monday night.

Observing the defendant's car was not in, Mr. Bowersox went to the room on Tuesday and entered with his pass key. After an investigation in the room, he observed Mrs. Henderson lying face down under the bed against the wall. Officers were called and it was found Mrs. Henderson had been stabbed 13 times as well as having been beaten about the head with some blunt instrument.

The defendant was apprehended in Sanford, Florida where he was masquerading as Jack McCoy in early January, 1955, and incarcerated in Orlando, Florida. Shortly thereafter, he stated that he wanted to talk to the F.B.I., whereupon he made a free and voluntary confession to Mr. Robert B. Parker and Mr. Charles Robichaud, special agents of the F.B.I., which both the trial court and the jury found to be free and voluntary. The record shows the agents advised the defendant of his constitutional rights, such as aid of counsel, and cautioned him that the statement could be used against him. Notwithstanding this advice, he made the signed and written confession. In the confession, he stated that he killed Mrs. Henderson in self-defense; that she became apprehensive that he was about to leave her stranded and she lunged at him with his hunting knife which she had possessed unknown to him. He took the knife away from her and stabbed her he did not know how many times. They rolled off the bed on to the floor next to the wall. Finding she was dead, he began his escape by telling Mr. Bowersox the falsehood concerning his departure. Later, he abandoned his automobile in Dallas only to be apprehended in Florida.

At the trial, he repudiated this written confession and defended on the theory that he had fallen asleep clothed in his slacks, undershorts, and shirt, and awakened to find the victim, Mrs. Henderson, had unzipped his slacks, unbuttoned his shorts, and was committing the abominable crime against nature by means of her mouth. He related he so detested such acts that he killed her in a furious rage.

On either theory, it was not necessary that he take Mrs. Henderson's life. On the first theory, the record clearly shows, according to his own signed confession, he was able to disarm Mrs. Henderson and relieve her of the hunting knife. On the second theory, it was not necessary that he take Mrs. Henderson's life in preventing the alleged crime against nature. By no stretch of the imagination was it necessary that he effect the victim's death in such a malicious, cruel, and inhuman manner.

The autopsy disclosed that most any one of the stab wounds could have proved fatal. The record in fact discloses he probably beat Mrs. Henderson about the head with some blunt instrument, probably an available all-steel hammer or broken water glass, and then having procured the hunting knife, he stabbed her, repeating the operation some 12 additional times. The brutality and depraved character of

the killing is exceeded only by incidents involving killings comparable to slaughter house operations, bodily mutilations, and dissections.

The defendant's confessions were amply corroborated by the other facts developed at the trial. It is readily apparent why the defendant did not question the sufficiency of the evidence on either theory of his defense.

 The first proposition urged by the defendant is the contention that he was entitled under 43A O.S.1953 § 51, the Mental Health Law, to have the question of the defendant's present sanity determined by the County Court and not under the provisions of 22 O.S.1951 §§ 1161, 1162, providing for the determination of present sanity at the hands of a jury of the District Court. The procedure set forth in 22 O.S. 1951 § 1162 as to whether the accused was mentally competent to make a rational defense was approved in Davis v. State, Okl. Cr., 300 P.2d 1000, and holding that the Mental Health Law did not repeal provisions of 22 O.S.1951 §§ 1161–1169, inclusive, relating to determination of an accused's present sanity as affecting his ability to make a rational defense.

 The second point urged by the defendant is that the trial court erred in refusing to order a transcript of the testimony taken at the preliminary hearing before the justice of the peace at the county's expense for the benefit of the defendant. The defendant cites no authority to support this contention. The statute to which he refers, 20 O.S.1951 § 111, is clearly in relation to the perfection of the transcript of the evidence as a necessary predicate for an appeal by petition in error and casemade attached to this court from a judgment and sentence imposed in the District Courts of the State of Oklahoma and is not applicable to the record made in a preliminary hearing. The defendant has had the benefit of the provisions of 20 O.S.1951 § 111 in perfecting his appeal to this court. The trial court did not commit reversible error in rejecting this contention.

 Finally, the defendant contends that the punishment is excessive and contrary to law. This is a plea for modification from the death penalty to life imprisonment under the court's power as provided under 22 O.S.1951 § 1066 for modification of judgment and sentence. The grounds for this contention is the assistant county attorney of Oklahoma County, Mr. Joe T. Martin, made prejudicial remarks relative to the defendant's right to appeal and that the jury's verdict would not be final for the reason thereof. Objection was interposed to this line of argument and sustained by the trial court with an admonition to the jury that all reference to the Criminal Court of Appeals was stricken and they were admonished to disregard the same. The record reflects only the foregoing, the arguments were not taken and preserved. On hearing of the motion for new trial, the record was sought to be amplified by affidavit. It has been repeatedly held that ordinarily error cannot be predicated on mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from their context and whether or not they were invited or provoked by remarks made by opposing counsel. Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927. The arguments were not taken down and it is not possible for us to determine what may have provoked this reference to the Criminal Court of Appeals. On the motion for new trial, the trial judge observed that the argument of the county attorney consumed less than fifteen minutes time; it was not inflammatory or vindictive in any sense, and was made in a rather matter of fact manner without any particular ire indicated. In overruling the motion for new trial, he stated: "The court doesn't feel that his argument inflamed the jury." Under the conditions herewith presented, the learned trial judge was preeminently in a better position to judge the situation than we are from the cold printed record. It is our opinion, however, that the matter set forth

in the casemade, relied upon by the defendant to sustain this point, was not such as to have inflamed the jury. The cases cited and relied upon by the defendant to support this point do not sustain the defendant's contention.

A careful examination of this record discloses a fair trial and one as free from error as possibly any we have been called upon to examine. Although counsel ably fought for the defendant, both in the lower court and in this court, they did not have any reasonable basis upon which to predicate a reversal or modification of the penalty imposed from death to life imprisonment. The judgment and sentence is accordingly affirmed.

The time originally appointed for the execution of the defendant, Otto A. Loel, having passed pending this appeal, it is ordered, adjudged and decreed that the judgment and sentence of the District Court of Oklahoma County, Oklahoma, be carried out by the electrocution of the defendant, Otto A. Loel, by the Warden of the Oklahoma State Penitentiary, McAlester, Oklahoma, on September 26, 1956.

JONES, P. J., and POWELL, J., concur.